UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**USDC-SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC#:**
**DATE FILED:** 9/13/2016

TIFFANY L. TAYLOR,

                Plaintiff,

v.

CITY OF NEW YORK and NEW YORK
CITY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

                Defendants.

No. 15-CV-7454 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Tiffany Taylor brings this employment discrimination action against the City of New York and her former employer, the New York City Department of Environmental Protection ("DEP"). Taylor alleges that she was discriminated against on the basis of her sex, race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 296; and the New York City Human Rights Law (the "NYCHRL"), N.Y. City Admin. Code § 8–101 *et seq.* Taylor also claims racial discrimination in violation of 42 U.S.C. § 1981. Finally, she brings state law claims of intentional infliction of emotional distress and negligent hiring, retention, and supervision. Defendants have moved to dismiss the Amended Complaint for failure to state a claim. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

Taylor, "a Black American woman," was hired by the DEP in 2001 as a level three clerical associate and has been a principal administrative associate ("PAA") level one since 2005. Am.

Compl. ¶¶ 8, 24–26.  She alleges that "[o]ver the course of [her] fourteen years of employment at the DEP, Defendants have repeatedly subjected [her] to unlawful discrimination and harassment because of her sex, race, color, and national origin, as well as to unlawful retaliation." *Id.* ¶ 2. Taylor makes four primary categories of allegations: (1) she was not promoted to PAA level two or three; (2) she was not hired as an apprentice construction laborer or construction laborer; (3) she was subject to a hostile work environment; and (4) she was retaliated against when she complained of the unequal treatment.  Because the hostile work environment and retaliation claims involve common facts, the Court will address those allegations together.

## I.    Failure to Hire: Construction Laborer and Apprentice Construction Laborer

Taylor first alleges that DEP repeatedly failed to hire her as an apprentice construction laborer and construction laborer because of her sex, race, color, and national origin.  Apprentice construction laborers and construction laborers are responsible for repairing and maintaining DEP's infrastructure. *See id.* Ex. D.  To become an apprentice construction laborer, one must possess a New York Driver's License and comply with certain medical and physical requirements. *Id.* ¶ 63 (citing Ex. D).  "To become a Construction Laborer an employee must train as an Apprentice Construction Laborer." *Id.* ¶ 36.

From "2002 to present," there have been apprentice construction laborer positions available, but, according to the Amended Complaint, the DEP only hired men for these positions, *id.* ¶¶ 37–40, and "most if not all of the males hired from 2002 to 2013 were relatives or close friends of DEP employees," *id.* ¶ 41.  Taylor alleges that she applied for the apprentice construction laborer position fourteen times: in May 2002, September 2002, February 2003, June 2003, August 2004, June 2005, April 2007, April 2008, May 2009, April 2010, June 2011, June 2012, May 2013, and May 2014. *Id.* ¶¶ 48–58, 60.  Despite purportedly meeting the minimum qualification

2

requirements for the position, however, none of Taylor's applications were successful. *Id.* ¶¶ 59, 65; *see also id.* Ex. D. She claims that the men who were hired for this position "are significantly less qualified" than she, and cites the example of William Dinn, a construction laborer who "suffers from a medical condition that prohibits his ability to drive and operate machinery, a fundamental requirement of the job." *Id.* ¶¶ 61–62.

Taylor also alleges that she "applied on multiple occasions" for the construction laborer position, but does not indicate when. *Id.* ¶ 44. She was told "on a consistent basis, from 2002 to the present," by supervisors and co-workers "not to bother applying because she is a woman and women are not hired for Construction Laborer positions." *Id.* ¶ 47. Finally, of the 370 construction laborer positions at the DEP, she alleges only two are occupied by women, *id.* ¶¶ 34–35, and only one of those two women was hired in the past twenty years. *Id.* ¶ 45.[1]

## II.    Failure to Promote: Administrative Level Two or Three

Taylor alleges, next, that despite making "numerous inquiries related to the possibility of a promotion" since 2005, DEP failed to promote her to PAA levels two or three "because she is a woman." *Id.* ¶ 73. She suggests that the reason two supervisors provided—that she could not be promoted to these positions because she did not work in the main office—was pretextual because two white females and one white male work as PAA level two or three even though they work outside of the main office. *Id.* ¶¶ 68–72.

---

[1] At times, Plaintiff refers to the construction laborer position independently from the apprentice construction laborer position. At other times, "construction laborer" is used to refer to both positions. *See* Am. Compl. ¶ 46 (Plaintiff notes that she "applied for the available Apprentice Construction Laborer and/or Construction Laborer positions (together "Construction Laborer positions")). It is therefore unclear whether there are 370 construction laborer positions, or whether there are 370 construction laborer and apprentice construction laborer positions together. *See id.* ¶¶ 34–35.

3

**III.    Hostile Work Environment and Retaliation**

Taylor also complains of a hostile work environment and retaliation. Specifically, she alleges that between 2004 and 2006, a white male supervisor, James Watson, posted pictures of monkeys in the common area "because of his dislike for blacks" and other male supervisors were "aware of Mr. Watson's conduct and were complicit with his actions." *Id.* ¶¶ 77–78. During the same time period, he also purportedly "badgered" her by spitting into and tampering with her food. *Id.* ¶ 79. Taylor also claims that, around this time and continuing to the filing of her complaint, her co-workers—including her supervisor Jorge Morales—called her a "bitch" and other profanities, and, "as a result, [she] has been caused much humiliation and has felt degraded." *Id.* ¶ 80.

In 2005, Taylor sent a letter to her union representative complaining that she was being discriminated against because she is a black woman. *Id.* ¶¶ 83–84. This letter was also sent via email to various members of management, including Watson. *Id.* ¶ 85. In February 2006, Taylor contends that she was told "pursuant to an investigation" that nothing could be done in response to her complaint "because it was her word against everyone else." *Id.* ¶ 86. Instead, in May 2006, she claims that, as retaliation for her complaint, she was transferred from Jerome Avenue Yard worksite in the Bronx to DEP's North 15 location in Brooklyn. *Id.* ¶ 87. This transfer occurred notwithstanding Taylor's complaints that it would considerably increase her commute time and costs. *Id.* ¶ 88.

Taylor alleges that the hostile work environment persisted at her new worksite, *id.* ¶ 89, in part, because Watson was also transferred to the North 15 location a few months after she began working there. *Id.* ¶ 90. After his transfer, he immediately confronted her about her previous complaint, and also "made it clear that he would get her fired." *Id.* ¶ 91. Taylor notified her

superiors of his behavior, purportedly to no avail. *Id.* ¶¶ 92–95. Instead, in April 2007, after she complained again of the discriminatory treatment, she was transferred to the Zerega location in the East Bronx, *id.* ¶ 96, where the "harassment and retaliatory treatment continued." *Id.* ¶ 97.

She was then transferred again, in December 2007 back to Jerome Avenue Yard. *Id.* The work environment at Jerome Avenue Yard purportedly had not improved. First, she claims that male colleagues used the women's restroom while she and other women were in it. *Id.* ¶ 81. This practice allegedly occurred most recently in December 2013. *Id.* ¶ 82. Additionally, Taylor contends that, in 2015, a Hispanic male supervisor, Jorge Morales, engaged in a course of conduct that she believes created a hostile work environment. *Id.* ¶¶ 80, 99–103.

Finally, Taylor alleges that she was transferred once more in 2015, from Jerome Avenue Yard back to the Zerega facility. *Id.* ¶ 104. She suggests that this transfer was ordered in response to formal complaints of sex and race discrimination that she had made to the DEP's Equal Employment Opportunity Board. *Id.* She also contends that this response fit a general pattern for the DEP: instead of "remediat[ing] [the] harsh environment," she was just "transferred from location to location." *Id.* ¶ 107. In all, Taylor was allegedly transferred at least six times in ten years because of the numerous complaints that she made to her supervisors over that same period of time. *Id.* ¶ 98.

## PROCEDURAL HISTORY

On August 15, 2014, Taylor filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming discrimination based on sex (the "EEOC Charge"). *See* Lockinger Decl. Ex. 1. Taylor filed an amended EEOC Charge on February 2, 2015. *Id.*[2]

---

[2] There appears to be some confusion about the date that Taylor's EEOC Charge was filed and amended. Although the original and amended EEOC Charges were not attached to Plaintiff's Amended Complaint, Taylor alleges that she "filed a charge of discrimination with the [EEOC] in June of 2014," but does not mention its amendment. Am. Compl. ¶ 16. Defendants contend that the EEOC Charge was received on August 15, 2014, and

"Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference," and thus may be considered when deciding a motion to dismiss. *Muhammad v. New York City Transit Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006). The original EEOC Charge alleged discrimination on the basis of sex, race, and color in its narrative section, but Taylor checked only the box that indicated sex-based discrimination. *See* Lockinger Decl. Ex. 1. In the Amended Charge, Taylor checked the boxes for discrimination on account of sex, race, and color. *Id.* Taylor filed the instant action on September 21, 2015, and subsequently filed the Amended Complaint on December 23, 2015.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice, and [the Court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Brown v. Daikin Am. Inc*, 756 F.3d 219, 225 (2d Cir. 2014) (internal citations and quotations omitted).

## DISCUSSION

Defendants move to dismiss Taylor's claims that (1) she was not promoted or hired to various positions on account of her sex, race, color, and national origin; (2) she was retaliated

---

amended on February 12, 2015. Lockinger Decl. ¶ 3. The Court has reviewed the timestamps on the filings and finds that Taylor's original EEOC Charge was filed on August 15, 2014, and the amendment on February 2, 2015. *See* Lockinger Decl. Ex A at 2–3.

6

against after making complaints about such discrimination; and (3) she was subject to a hostile work environment. Where the Amended Complaint includes the timing of such allegations, the Court will first consider whether these allegations are timely.[3]  For the claims that are timely and those that are undated, the Court will consider whether they state a claim on the merits. Lastly, the Court will consider Defendants' motion to dismiss Taylor's state law claims for intentional infliction of emotional distress and negligent hiring, retention, and supervision.

## I.  Disparate Treatment: Failure to Hire and Promote Claims

Taylor alleges disparate treatment claims under Title VII, 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL for (1) the failure to hire her as an apprentice construction laborer; (2) the failure to hire her as a construction laborer; and (3) the failure to promote her to higher-level PAA positions. With respect to the claim that she was not hired as an apprentice construction laborer, Defendants move to dismiss this claim on the grounds that the majority of her applications to this position are outside the limitations period.   Defendants also argue that this claim, as well as her claims that she was not hired as a construction laborer and not promoted to a higher-level PAA positions, fail to state a claim on the merits. The Court will consider each argument in turn.

### A.  Timeliness of the Apprentice Construction Laborer Claim

#### 1.  Title VII

For a Title VII claim to be timely, the alleged discriminatory conduct must have occurred less than 300 days prior to the filing of the EEOC charge. *See* 42 U.S.C. § 2000e–5(e)(1); *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010). Plaintiff filed her charge with the EEOC on August 15, 2014, *see* Lockinger Decl. Ex A, which means any conduct

---

[3] "The lapse of a limitations period is an affirmative defense that a defendant must plead and prove. However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (internal citations omitted).

that occurred before October 19, 2013 is time barred.[4] Accordingly, Plaintiff's claims that she was not hired as an apprentice construction laborer from May 2002 to May 2013 are untimely, while her May 2014 application is within the limitations period.

Taylor contends that her claims outside the limitations period should be considered timely pursuant to the continuing violations doctrine. Under this doctrine, "'if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.'" *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)). The Supreme Court, however, held in *National Railroad Passenger Corp. v. Morgan* ("*Morgan*"), 536 U.S. 101, 113 (2002), that "discrete acts" such as failure to hire and failure to promote are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113–14; *see also Chin*, 685 F.3d at 156 ("*Morgan* established that an employer's failure to promote is by its very nature a discrete act."). Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. The continuing violation doctrine is thus not applicable to Taylor's failure to hire and failure to promote claims under Title VII.

---

[4] Defendants argue that the statute of limitations for racial discrimination and retaliation claims should be measured from the time the amended EEOC Charge was filed because Taylor did not check the "race" and "retaliation" boxes in her original EEOC charge. Defs.' Mem. 9. But as the court held in *Stuevecke v. New York Hosp. Medication Center of Queens*, 01-CV-0326 (FB), 2003 WL 22019073, at *5 (E.D.N.Y. Aug. 26, 2003), a plaintiff's retaliation claim may be timely even though she had not checked the "retaliation" box when "her narrative description of the . . . alleged wrongdoing could reasonably have prompted an investigation of retaliatory conduct." *Id.*; *see also, e.g., Kearney v. ABN AMRO Inc.*, No. 04-CV-06885 (DAB), 2006 WL 2354819, at *4 (S.D.N.Y. Aug. 10, 2006) (finding that a plaintiff who did not check the "retaliation" box could pursue her claim when the memorandum accompanying the EEOC charge "repeatedly raised her retaliation claim"); *Macri v. Newburgh Enlarged City Sch. Dist.*, 01-CV-1670 (MBM), 2004 WL 1277990, at *52–53 (S.D.N.Y. June 7, 2004) (similar). The same is true here: the narrative description of Defendants' alleged conduct in the original EEOC Charge alleges race discrimination and retaliation such that it could reasonably have prompted an investigation of these claims. *See* Lockinger Decl. Ex. 1 at 2 ("I was discriminated against because of my . . . race (African American)."; "Whenever I made complaints about race and sex based discrimination, Respondent transferred me without addressing my concerns."). The Court will therefore measure the statute of limitations from August 15, 2014, the filing of the original EEOC Charge, for all Taylor's Title VII claims.

## 2. § 1981

The majority of Taylor's allegations regarding the apprentice construction laborer position are also untimely under § 1981. As the apprentice construction laborer position would amount to "a new and distinct relation" between Taylor and DEP, the limitations period is three years under § 1981. *Wright v. City of Ithaca*, 633 F. App'x 63, 65 (2d Cir. 2006) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989)). All claims that accrued prior to September 21, 2012 are thus time barred, which means only Taylor's May 2013 and May 2014 applications for the apprentice construction laborer position are timely under § 1981.

Taylor proffers the same continuing violation argument with respect to her § 1981 claim as she does for her Title VII claim. Because "the distinction drawn in *Morgan* between hostile work environment claims and claims of discrete acts of discrimination should apply equally to § 1981 disparate treatment claims," however, this argument fails. *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 527 (S.D.N.Y. 2002), *aff'd*, 76 F. App'x 366 (2d Cir. 2003); *see also Blake v. Bronx Lebanon Hosp. Ctr.*, No. 02-CV-3827 (CBM), 2003 WL 21910867, at *6 (S.D.N.Y. Aug. 11, 2003).

### B. NYSHRL & NYCHRL

The NYSHRL and NYCHRL statutes of limitations are three years. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). "Although the Second Circuit has yet to definitively opine on the issue of whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted under the NYSHRL and NYCHRL, numerous courts in this Circuit have held that the three-year statute of limitations applicable to claims under the NYSHRL and NYCHRL 'is tolled during the period in which a complaint is filed . . . with the EEOC.'" *Esposito v. Deutsche Bank AG*, No. 07-CV-6722 (RJS), 2008 WL 5233590,

9

at *5 (S.D.N.Y. Dec. 16, 2008) (collecting cases, footnote omitted) (quoting *Lee v. Overseas Shipping Corp.,* No. 00-CV-9682 (DLC), 2001 WL 849747, at *8 (S.D.N.Y. July 30, 2001)). Factoring in this tolling period, any conduct prior to November 22, 2011 is time barred under the NYSHRL and NYCHRL, which means that only Taylor's claims that she was not hired as an apprentice construction laborer in June 2012, May 2013, and May 2014 are timely under the state and city statutes.

As the continuing violations doctrine of the NYSHRL mirrors that of Title VII, the discrete acts of failing to hire Taylor for the apprentice construction laborer position cannot be considered a continuing violation under the NYSHRL. *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013).[5] "New York state courts have," however, "held that the prior, more generous, continuing violations doctrine continues to apply under" the NYCHRL than that adopted by the Supreme Court in *Morgan. Id.* at 250 (citing *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 35 (N.Y. App. Div. 2009)); *accord Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014).[6] The doctrine under the NYCHRL considers "[o]therwise time-barred discrete acts . . . timely 'where specific

---

[5] Although courts have recognized that there is a split in authority as to whether the narrower continuing violation doctrine established in *Morgan* applies to NYSHRL claims, *see Torres v. New York Methodist Hosp.*, No. 15-CV-1264 (PKC), 2016 WL 3561705, at *8 (S.D.N.Y. Jan. 7, 2016); *Kalola v. Int'l Bus. Mach. Corp.*, No. 13-CV-7339 (VB), 2015 WL 861718 (S.D.N.Y. Feb. 3 2015), the weight of authority has held that *Morgan* applies to the NYSHRL. *See Sotomayor,* 862 F. Supp. 2d at 250 ("The narrower definition of the continuing violations doctrine under *Morgan* applies to plaintiff's discrimination claims under state law."); *Dimitracopoulos*, 26 F. Supp. 3d at 212 (same); *Staff.*, 233 F. Supp. 2d at 527 (finding "ample justification to extend the reasoning in *Morgan* to Plaintiff's . . . state law claims").

[6] Although some Courts have held that the continuing violation doctrine adopted in *Morgan* applies to claims brought pursuant to the NYCHRL, *see, e.g., Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011); *Milani v. Int'l Bus. Machines Corp.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004), *aff'd* 137 F. App'x 430 (2d Cir. 2005); *Flaherty v. Metromail Corp.*, 293 F.Supp.2d 355, 358–59 (S.D.N.Y. 2003), this Court agrees with the First Department's reasoning in *Williams v. New York City Housing Authority*, 872 N.Y.S.2d 27, 35 (N.Y. App. Div. 2009), which, in holding that the broader, pre-*Morgan* continuing violation doctrine continues to apply to NYCHRL claims, noted that "[t]here is no reason to believe that the Supreme Court's more restrictive rule of 2002 was anticipated when the City HRL was amended in 1991, or even three years after that ruling, when the Restoration Act was passed in 2005." *Id.*; *see also Sotomayor*, 862 F. Supp. 2d at 250; *Dimitracopoulos*, 26 F. Supp. 3d at 212; *Mohamed v. New York Univ.*, No. 14-CV-8373 (GBD) (MHD), 2015 WL 3387218, at *20 (S.D.N.Y. May 21, 2015), *report and recommendation adopted*, 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015).

and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Id.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). Discrete acts such as failures to hire can accordingly trigger the NYCHRL's continuing violations doctrine where they can be shown to be the result of a discriminatory policy or practice. *See Cornwell v. Robinson*, 23 F.3d 694, 703–704 (2d Cir. 1994), (citing *Ass'n Against Discrimination in Empl't, Inc. v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir. 1981)) *abrogated in part on other grounds*, *Morgan*, 536 U.S. at 101.

Under this more liberal standard, Taylor's claims that the DEP repeatedly failed to hire her on account of her sex, race, color, and national origin for the position of apprentice construction laborer amount to a continuing violation, rendering the conduct outside the limitations period timely under the NYCHRL. When Plaintiff's allegations are considered together—that Plaintiff is and has been qualified for the apprentice construction laborer position, she applied for the position fourteen times without success, supervisors told her that women are not hired for this position, and women occupy only two out of 370 construction laborer positions—"[t]he alleged recurring failure . . . could be construed as 'specific and related instances of discrimination' which 'continued unremedied for so long as to amount to a discriminatory policy or practice.'" *Mohamed v. New York Univ.*, No. 14-CV-8373 (GBD), 2015 WL 5307391, at \*3 (S.D.N.Y. Sept. 10, 2015) (citing *Sotomayor*, 862 F. Supp. 2d at 250); *see also Morgan v. N.Y. State Att'y Gen.'s Office*, No. 11-CV-9389 (PKC), 2013 WL 491525, at \*12 (S.D.N.Y. Feb. 8, 2013) (continuing violation found under the NYCHRL where untimely failure to promote claim and timely hostile work environment claim were both premised on same national origin discrimination). Taylor's NYCHRL claims are thus all timely, dating back to the first application for the apprentice construction laborer position in May 2002 through her application in May 2014.

11

In summary, with respect to Taylor's claim that she was not hired as an apprentice construction laborer, the following claims are timely: (1) Taylor's May 2014 application under Title VII; (2) her May 2013 and May 2014 applications under § 1981; (3) her June 2012, May 2013, and May 2014 applications under NYSHRL; and (4) all fourteen applications under NYCHRL.

## C. Merits

For the failure to hire and promote claims that are timely, Defendants move to dismiss for failure to state a claim on the merits. Defendants' motion is denied as to Plaintiff's claim that she was not hired as an apprentice construction laborer on account of her sex, but is otherwise granted.

As Title VII, § 1981 and the NYSHRL claims are all considered under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), the Court analyzes them together. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (Title VII and § 1981); *McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015) (Title VII, § 1981 and the NYSHRL). Under the *McDonnell Douglas* framework, to make a *prima facie* showing of failure to promote or hire under Title VII, § 1981, and the NYSHRL, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009). "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2013) (internal citations, alterations, and

12

quotations omitted). "In other words, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

The Second Circuit has counseled that, at the pleading stage, a plaintiff faces only a "minimal" burden. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 311). "The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Littlejohn*, 795 F.3d at 311. Instead, they "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* In determining whether a complaint meets this standard, the Court "must be mindful of the 'elusive' nature of intentional discrimination." *Vega*, 801 F.3d at 86 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981)). "[R]arely is there 'direct, smoking gun, evidence of discrimination,'" and so a plaintiff "usually must rely on 'bits and pieces' of information to support an inference of discrimination, *i.e.*, a 'mosaic' of intentional discrimination." *Id.* (internal citations omitted).

The NYCHRL standard of liability is lower. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Thus, to the extent that a plaintiff states a claim under Title VII and the NYSHRL, she therefore necessarily states a claim under the NYCHRL. In the event that a plaintiff's claims fall short of the federal and state standards, "federal courts must consider separately whether it is actionable under the broader New York City standards." *Id.* (citing *Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 58 (1st Dep't 2012)). The NYCHRL makes it

an "unlawful discriminatory practice [f]or an employer . . . because of the actual or perceived . . . race, . . . color, national origin, [or] gender . . . to refuse to hire or employ . . . such person." NYCHRL § 8–107(a). The law has a "uniquely broad and remedial purposes," NYCHRL § 8–130, such that courts should construe NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik*, 715 F.3d at 109 (quoting *Albunio v. City of New York*, 947 N.E.2d 135 (2011)). Thus, to state a claim under the NYCHRL, a plaintiff need only show that she was treated "less well than other employees" because of her protected characteristic. *Id.* (quoting *Williams*, 872 N.Y.S.2d at 38).

### 1. Apprentice Construction Laborer

Taylor's claim that she was not hired as an apprentice construction laborer on account of her sex satisfies the "minimal burden" under Title VII. *Littlejohn*, 795 F.3d at 311. Taylor alleges that, despite being qualified for the apprentice construction laborer position, her fourteen applications over twelve years never proved successful. Taylor also identifies multiple male applicants who were hired over the period in which she submitted applications. Am. Compl. ¶ 42. *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case.") (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).[7] This was in the context of allegedly being told by supervisors and co-workers "on a consistent basis, from 2002 to the present . . . not to bother applying because she is a woman and women are not hired" as apprentice construction laborers.

---

[7] Defendants object to Plaintiff's reliance on the hiring of these male applicants because they were hired outside of the Title VII limitations period. Defs.' Mem. 20–21. Title VII does not, however, "bar an employee from using the prior acts as background evidence to support a timely claim." *Morgan*, 536 U.S. at 113; *see also Chin.*, 685 F.3d at 150.

Am. Compl. ¶ 47. Taylor also states that only two out of 370 construction laborers at the DEP are female. *Id.* ¶ 35. Taken together, these allegations state a claim for sex discrimination under Title VII, the NYSHRL, as well as the broader NYCHRL standard. *See Littlejohn*, 795 F.3d at 313 ("The fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis.") (citing *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *Diaz v. N.Y.C. Transit Auth*, 98 F. App'x 58, 59 (2d Cir. 2004) (finding inference of discrimination where employer hired two younger white men for the position sought by an older African-American plaintiff). As "[i]t is settled," however, "that § 1981 does not prohibit discrimination on the basis of gender," *Guzman v. Concavage Marine Constr. Inc.*, No. 14-CV-8587 (KMK), 2016 WL 1273285, at *2 (S.D.N.Y. Mar. 31, 2016) (quoting *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998)), to the extent Taylor alleges that she was not hired as an apprentice construction laborer on account of her gender in violation of § 1981, this claim is dismissed.

Taylor's complaint is, by contrast, devoid of facts that could give rise to an inference that she was not hired as an apprentice construction laborer on account of her race, color, or national origin. Defendants' motion to dismiss this claim is thus granted insofar as it alleges that she was not promoted to apprentice construction laborer on account of her race, color, or national origin, but denied with respect to her claim that she was not hired on account of her sex.

### 2. Construction Laborer

Taylor's claim that she was not hired to the position of construction laborer fails to state a claim under Title VII, § 1981 and the NYSHRL because she does not make a *prima facie* showing that she was qualified, nor does she cite a specific instance in which she applied for the position. Instead, her own allegations, which state that "[t]o become a Construction Laborer an employee

15

must train as an Apprentice Construction Laborer," Am. Compl. ¶ 36, demonstrate that she did not have the requisite experience to be qualified as a construction laborer, never having trained as an apprentice. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (affirming dismissal of failure to promote claim where plaintiff failed to allege, *inter alia*, her qualifications), *superseded on other grounds by* Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85; *Mendelsohn v. Univ. Hosp.*, 178 F. Supp. 2d 323, 328 (E.D.N.Y. 2002) (dismissing Title VII claim because "complaint does not contain even a conclusory allegation that the plaintiff was qualified for the position").

For the same reason, Taylor has not raised a plausible claim that she was treated less well on account of her sex so as to raise a claim under the NYCHRL. *See Mullins v. Consolidated Edison Co. of New York*, No. 13-CV-6800 (LGS), 2015 WL 4503648, at *9 (S.D.N.Y. July 22, 2015) (dismissing failure to hire claim under Title VII, the NYSHRL, and the NYCHRL where "Plaintiff did not apply for the position and in any case was not qualified for it"); *Deshpande v. TJH Med. Servs., P.C.*, 861 N.Y.S.2d 697, 700 (2d Dep't 2008) (dismissing NYCHRL claim where plaintiff "did not allege any specific instance where the appellants refused to promote him to a position for which he applied and for which he was qualified"), *abrogated on other grounds by Webb-Weber v. Cmty. Action for Human Servs., Inc.*, 15 N.E.3d 1172 (N.Y. 2014).

### 3. PAA

Taylor's claim that she was not promoted to PAA level two and three on account of her sex, race, color, and national origin also fails because she does not allege that she applied to these positions. She merely avers that she "made numerous *inquiries* related to the possibility of a promotion [to the PAA level two and three] and each time she was denied because she is a woman." Am. Compl. ¶ 73 (emphasis added). "That Plaintiff expressed a general interest in promotion,

16

however, is not enough to excuse her from the specific-application requirement." *Tulino v. City of New York*, No. 15-CV-7106 (JMF), 2016 WL 2967847, at \*6 (S.D.N.Y. May 19, 2016) (internal citation omitted); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004) ("[T]he second element of a *prima facie* showing cannot be established merely with evidence that a plaintiff generally requested promotion consideration."). "[I]ndeed, one of the key purposes of that requirement is to protect employers from the unfair burden of having to keep track of all employees who have generally expressed an interest in promotion and to consider each of them for any opening for which they are qualified but did not specifically apply." *Tulino*, 2016 WL 2967847, at \*6 (internal alterations and quotations omitted) (quoting *Petroniso*, 385 F.3d at 227).

Even under the more permissive NYCHRL standard, Taylor fails to state a claim. Under the NYCHRL, a plaintiff need only show that she was somehow treated "less well than other employees because of her gender." *See Mihalik*, 715 F.3d at 110 (quoting *Williams*, 872 N.Y.S.2d at 39). But "if plaintiff 'was qualified for the position, yet [she] never applied, [she] was never rejected under circumstances that would give rise to an inference of [sex] discrimination.'" *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 300 (S.D.N.Y. 2012) (quoting *Fraser v. Fiduciary Tr. Co. Int'l*, No. 04-CV-6958 (PAC), 2009 WL 2601389, at \*8 (S.D.N.Y. Aug. 25, 2009)).

In sum, of the failure to hire and promote claims, only Taylor's timely claims that she was not hired as an apprentice construction laborer on account of her sex survive.

## II. Retaliation

Defendants next move to dismiss Taylor's retaliation claims, arguing her claims are mostly time-barred, and, to the extent that they are not, they fail both (a) because the complained of acts do not amount to adverse employment actions and (b) because Taylor has failed to plead any facts

17

supporting inference of causation between the alleged retaliatory transfers and the protected activity.

## A. Timeliness

Taylor alleges that the DEP, in retaliation for making complaints about the discriminatory behavior of her supervisors and co-workers transferred her between offices in May 2006, April 2007, December 2007, and in an unspecified month in 2015. The May 2006, April 2007, and December 2007 transfers are beyond the statutes of limitations for Title VII (300 days), § 1981 (four years), and the NYSHRL and the NYCHRL (three years plus tolled period during the pendency of the EEOC Charge). As they concern discrete acts, the continuing violations doctrine does not apply under Title VII, § 1981, and NYSHRL. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature.") (quoting *Malarkey v. Texaco*, 559 F. Supp. 117, 121 (S.D.N.Y. 1982), *aff'd*, 704 F.2d 674 (2d Cir. 1983)). Nor does the Amended Complaint sufficiently allege that the untimely transfers are related to the 2015 transfer, even under the more lenient NYCHRL standard. While the NYCHRL allows claims based on untimely acts to be brought if those acts are connected to timely acts by way of a discriminatory policy or practice, *Williams*, 872 N.Y.S.2d at 35, Taylor has not alleged any facts that connect the 2006 and 2007 transfers to the 2015 transfer. To the contrary, the length of time separating the transfers and the fact that the 2006 and 2007 complaints were made to different people than the 2015 complaint suggest that the alleged retaliatory transfers were not a continuous practice or policy of discrimination. *See Dimitracopoulos*, 26 F. Supp. 3d at 212 (declining to find continuing violation where "[l]ater evaluations and letters to file by separate individuals are not part of the same continuing pattern of discriminatory conduct by a

prior principal."); *Anderson v. City of New York*, No. 06-CV-5726 (RRM), 2012 WL 6720694, at
*9 (E.D.N.Y. Dec. 27, 2012) (holding that the continuing violations doctrine did not apply where
the discriminatory "incidents occurred at different [locations], over the course of six years, and
were perpetrated by different employees."); *Ruiz v. New York City Fire Dep't*, No. 00-CV-4371
(AGS), 2001 WL 767009, at *3 (S.D.N.Y. July 9, 2001) (holding that incidents of alleged
retaliation in 1994, April 1996, January and October 1998, and August 1998 "sufficiently isolated
in time . . . as to break the asserted continuum of discrimination.") (alteration in original) (quoting
*Quinn v. Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998)). Accordingly, the only timely
allegation of retaliation is that concerning the 2015 transfer.

### B. Merits

Although timely, Taylor's 2015 retaliation claim fails on the merits. To successfully plead
a retaliation claim under Title VII, § 1981, and the NYSHRL, Plaintiff "must plausibly allege that
(1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because'
[she] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C.
§ 2000e–3(a)). Taylor has not adequately pled either element.

First, as pled, the 2015 transfer does not constitute an adverse employment action. In the
retaliation context, an action is adverse if it "well might have dissuaded a reasonable worker from
making or supporting a charge of discrimination." *Burlington N. & Sante F. Ry. Co. v. White*, 548
U.S. 53, 77 (2006) (internal citation omitted). "To be 'materially adverse' a change in working
conditions must be 'more disruptive than a mere inconvenience or an alteration of job
responsibilities." *Galbaya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)
(quoting *Crady v. Liberty Nat. Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).
While Taylor alleges that she was transferred, she "does not provide any information as to how

the transfer impacted [her]. Because [she] does not allege any difference in pay, responsibilities, prestige, or any other factor that would indicate [she] was at all negatively affected," this Court cannot hold that the transfer would have dissuaded a reasonable person from further engaging in protected activity. *Feliciano v. City of New York*, No. 14-CV-6751 (PAE), 2015 WL 4393163, at *7 (S.D.N.Y. July 15, 2015); *cf. Patrolmen's Benevolent Ass'n of City of New York v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002) ("A lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way.").[8]

Even if Plaintiff's transfer amounted to an adverse employment action, fatal to Taylor's claim is her failure to plead any facts that suggest that her complaint to the DEP's Equal Employment Opportunity Board caused her to be transferred. "A plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e–3(a)). Causation can be inferred by "showing that the protected activity was closely followed in time by the adverse [employment] action." *Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (alteration in original) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). Although Plaintiff alleges this retaliatory transfer occurred sometime in 2015, the Amended Complaint does not specify when Taylor lodged her complaint with the DEP's Equal Employment Opportunity Board. *See* Am. Compl. ¶ 104. Conclusory allegations aside, there is nothing that connects her protected activity and the 2015 transfer. Plaintiff's retaliation claim thus fails under Title VII, § 1981, and the NYSHRL.

---

[8] Although Plaintiff alleges that, when she was transferred in May 2006 from Jerome Avenue in the Bronx to the North 15 Location in Williamsburg, Brooklyn, she complained "that she did not want to be transferred as both her commute time and expenses related to the commute would increase considerably," Am. Compl. ¶¶ 87–88, she did not make any such allegations with respect to the 2015 transfer.

Taylor's claims regarding the 2015 transfer fail under the NYCHRL for similar reasons. Under that statute, a plaintiff must show that: "(1) [she] participated in a protected activity known to defendants; (2) defendants took an action that disadvantaged [her]; and (3) a causal connection exists between the protected activity and the adverse action." *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 51–52 (N.Y. App. Div. 2012). "In contrast to Title VII, NYCHRL does not require a plaintiff to establish that she incurred an 'adverse employment action' in order to support a retaliation claim; rather, it requires only a showing that the event was 'reasonably likely to deter a person from engaging in protected activity.'" *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 661 (E.D.N.Y. 2015) (citing *Rozenfeld v. Dep't of Design & Const. of City of New York*, 875 F. Supp. 2d 189, 208 (E.D.N.Y. 2012)). Although "New York courts have broadly interpreted the NYCHRL's retaliation provisions," *Mihalik*, 715 F.3d at 112, a plaintiff must still plead some facts that her employers' actions disadvantaged her and that the action was connected to her protected activity. As discussed above, Taylor has not done so here. *See Feliciano*, 2015 WL 4393163, at *8 (dismissing NYCHRL retaliation claim where plaintiff did "not pled *any* facts that would allow an inference that he was disadvantaged by his transfer.") (emphasis in original). Taylor's retaliation claims are thus dismissed.

### III.    Hostile Work Environment

Defendants' motion to dismiss Taylor's hostile work environment claims brought pursuant to Title VII, § 1981, the NYSHRL, and the NYCHRL is granted, as the majority of the claims are untimely, and the remainder fail to state a claim. Taylor is, however, granted leave to amend this claim.

## A. Timeliness

In support of her hostile work environment claims, Taylor references conduct that occurred from 2004 to 2007, in December 2013, and in 2015. Under Title VII, § 1981, the NYSHRL, and the NYCHRL, only the December 2013 and 2015 claims are timely.[9]

Although Taylor again argues that conduct that took place from 2004 to 2007 should be considered timely under the continuing violation doctrine, she has failed to plead sufficient facts to connect the untimely retaliation claims to the timely ones. "A hostile work environment claim, unlike a discrete employment action, will be treated as a continuing violation where the claim 'is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Harris v. S. Huntington Sch. Dist.*, No. 06-CV-3879 (DGT), 2009 WL 875538, at *10 (E.D.N.Y. Mar. 30, 2009) (quoting *Morgan*, 536 U.S. at 117).[10] "Thus, in hostile work environment cases, an 'offensive incident within the limitations period permits consideration of an incident preceding the limitations period . . . if the incidents are sufficiently related.'" *Caravantes v. 53rd St. Partners, LLC*, No. 09-CV-7821 (RPP), 2012 WL 96474, at *7 (S.D.N.Y. Jan. 12, 2012) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010)).

Even assuming that a hostile work environment claim arises from the 2013 and 2015 conduct, Plaintiff has failed to show that the untimely conduct is "sufficiently related" to events

---

[9] Although Plaintiff's complaints about the 2015 conduct were not included in either her original or amended EEOC Charge, "[a] district court . . . has jurisdiction to hear Title VII claims that . . . are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded on other grounds by* Civ. Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071. "A claim is considered reasonably related if the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge' that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001) (internal citation omitted). Here, because the 2015 conduct would likely have fallen within the scope of the EEOC investigation of Taylor's earlier allegations, the 2015 conduct is properly before the Court.

[10] For hostile work environment claims, courts apply the same standard for a continuing violation under Title VII, § 1981, NYSHRL, and NYCHRL. *See, e.g., Bermudez*, 783 F. Supp. 2d at 574; *Bartoli v. City of New York*, No. 09-CV-4163 (JG), 2010 WL 1539055, at *3 (E.D.N.Y. Apr. 19, 2010); *Bartman v. Shenker*, 786 N.Y.S.2d 696, 702 (Sup. Ct. 2004).

that occurred within the statutes of limitations. Plaintiff's complaints about the 2004–2007 period all reference the conduct of one supervisor, James Watson. He purportedly posted pictures of monkeys in the common area as a means of harassing African American employees, spat on and tampered with Plaintiff's food, and otherwise "badgered" Plaintiff. Am. Compl. ¶¶ 76–79. The timely allegations, by contrast, relate to incidents allegedly perpetrated by other employees six or more years later. The Court therefore cannot find that they are sufficiently related to constitute a continuing violation. *See Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 405 (S.D.N.Y. 2012) (dismissing hostile work environment claims as untimely where they "involved wholly different employees" and "happened at least five years prior"); *Drees v. Cty. of Suffolk,* No. 06-CV-3298 (JFB), 2009 WL 875530, at *8 (E.D.N.Y. Mar. 30, 2009) (holding no continuous violation where, *inter alia*, timely incidents "involved different supervisors" and "there were no incidents whatsoever for at least 5 years"). Accordingly, only the claims related to the men's use of the women's bathroom in 2013 and Morales' treatment of Taylor in 2015 are timely.

### B. Merits

For the reasons stated on the record at the September 13, 2016 conference, the timely hostile work environment claims are dismissed. Taylor is, however, granted leave to amend this claim.

### IV. State Tort Claims

Lastly, Defendants' motion to dismiss the state tort claims of intentional infliction of emotional distress and negligent hiring, retention, and supervision is granted. "Under New York law, a plaintiff cannot maintain a tort claim against the state or a subdivision of the state unless he or she serves a notice of claim within ninety days of when the claim arose." *Tulino*, 2016 WL 2967847, at *3. Moreover, a plaintiff bringing such claims must "plead in the complaint that: (1)

23

the plaintiff has served the notice of claim [on the municipal defendants]; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citing N.Y. Gen. Mun. L. § 50–I (McKinney's 1986)). If a plaintiff does not plead these elements, the district court must dismiss the claims for failure to state a cause of action. *Id.* at 794.

As Taylor has failed to plead that she complied with the notice of claim requirement, her claim for international infliction of emotional distress and negligent hiring, retention, and supervision are dismissed. *See El v. City of New York*, No. 14-CV-9055 (GHW), 2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015).

24

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Taylor's claims that she was not hired as an apprentice construction laborer on account of her sex: (1) in May 2014 under Title VII; (2) in June 2012, May 2013, and May 2014 under NYSHRL; and (3) in May 2002, September 2002, February 2003, June 2003, August 2004, June 2005, April 2007, April 2008, May 2009, April 2010, June 2011, June 2012, May 2013, and May 2014 under NYCHRL survive. Taylor's claims that (1) she was not hired as an apprentice construction laborer on account of her race, color or national origin; (2) she was not hired as a construction laborer; (3) she was not promoted to PAA level two and three; (4) she was retaliated against; and (5) she was subject to a hostile work environment are dismissed. Plaintiff is, however, granted leave to amend her hostile work environment claims, and, if she chooses to do so, shall file a second amended complaint by September 26, 2016. The Clerk of Court is respectfully directed to terminate the motions pending at docket number 13 and 20.

SO ORDERED.

Dated:        September 13, 2016
              New York, New York

                                        Ronnie Abrams
                                        United States District Judge